**Howard HILL and Douglas Hill, Plaintiffs,**

v.

**R. A. ROLLERI, dba Rolleri Trucking, American Lumber Species, Inc., and James Earl Farley, Defendants and Third-Party Plaintiffs and Appellees,**

v.

**GREYHOUND LINES, INC., Third-Party Defendant and Appellant.**

No. 77–2600.

United States Court of Appeals, Ninth Circuit.

March 26, 1980.

Stanley C. Jones, Klamath Falls, Ore., Ridway K. Foley, Jr., Portland, Ore., for third-party defendant and appellant.

Before KILKENNY and WALLACE, Circuit Judges, and JAMESON, District Judge.[*]

KILKENNY, Circuit Judge:

## STATEMENT OF THE CASE

This personal injury action was originally filed in Oregon state court, but was removed to the district court on grounds of diversity. At that time, the parties to the action were: (1) Howard Hill and his son, Douglas Hill, the plaintiffs who were injured when their car was struck head-on by a tractor-trailer truck; (2) R. A. Rolleri, a defendant and the owner-lessor of the tractor-trailer truck which struck the Hill vehicle; (3) American Lumber Species, Inc. (American), a defendant and the lessee of the tractor-trailer truck; (4) James Earl Farley, a defendant and the driver of the tractor-trailer truck; and (5) Greyhound Lines, Inc. (Greyhound), the third party defendant, impleaded by American and charged with negligent operation of a bus, causing the tractor-trailer truck to strike the Hill vehicle.

During the course of the litigation, the status of the parties changed. First, Rolleri was dismissed from the proceedings. Then, during a trial by jury, the Hills settled their claim against American and Farley for $63,-500.00. The trial continued between American and Farley as third-party plaintiffs and Greyhound as third-party defendant to determine the ultimate liability for the accident. The jury returned a verdict on special interrogatories, finding Greyhound negligent and liable in damages for $63,500.00. Greyhound appeals the verdict and judgment. We affirm.

## BACKGROUND FACTS

At approximately midnight on November 21, 1972, the Hills' car collided with American's tractor-trailer truck, driven by Farley. The Hills were northbound from San Francisco and Farley was southbound on his way to Sacramento on Highway 97. The accident occurred about sixty miles north of Klamath Falls, Oregon, at a place known as Sand Creek. The road in that area extends for several miles in a long, straight and level stretch. On the night of the accident, however, the weather conditions were marginal and travelers were confronted with patches of fog and ice on the road.

Each party tells a different tale of the events leading up to the accident. Greyhound's position is that, although it had three buses traveling Highway 97 on the evening of November 21st, no Greyhound bus was in the precise area of Sand Creek at the time of the accident. American and Farley contend that Farley was driving his rig south near Sand Creek at between 30 and 35 m.p.h. when it was passed by a Greyhound bus. After completing the pass, the bus braked suddenly, forcing Farley to move into the northbound lane in order to avoid hitting the rear of the bus. Farley then saw the Hill car approaching from the other direction. He applied full brakes and managed to pull the truck back behind the bus. Unfortunately, the trailer broke away and collided with the Hill car. Instead of stopping the bus continued down the road to Klamath Falls.

## ISSUES

I. Whether the district court lost jurisdiction after the Hills settled their claim.

[*] The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

II. Whether the district court erred in admitting a witness's statements recorded in a police officer's report.

III. Whether the district court abused its discretion in refusing to admit evidence that a party was cited for failure to maintain control.

IV. Whether the district court abused its discretion in admitting testimony by another truck driver that he was recklessly passed by a Greyhound bus shortly before coming upon the scene of the accident.

V. Whether the district court properly instructed the jury on the burdens of proof.

I.

At the time this action was filed, there was no question that diversity jurisdiction was present. The amount in controversy exceeded $10,000.00. The Hills were residents of Oregon. Rolleri was a citizen of California, and American was a Nevada corporation with its principal place of business in California. Farley was also a citizen of California. Greyhound was incorporated in California and had its principal place of business in a state other than Oregon. In short, the plaintiffs were citizens of Oregon and all the other parties were citizens of other states. The necessary complete diversity was present. 28 U.S.C. § 1332; *Stawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806).

However, the original plaintiffs, the Hills, settled their claims. Although the district court's jurisdiction to continue to hear the third-party action was not questioned below, we have requested the parties to address the issue. The question is whether federal jurisdiction over the third-party claim, which existed when the trial began, survived the settlement of the main action upon which the diversity jurisdiction depended.

The general rule in diversity cases is that if the jurisdictional requisites are present when the action begins, subsequent events will not ordinarily defeat the district court's jurisdiction. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 295, 58 S.Ct. 586, 593, 82 L.Ed. 845 (1938); *Hardenbergh v. Ray*, 151 U.S. 112, 118, 14 S.Ct. 305, 306, 38 L.Ed. 93 (1894); *Mullen v. Torrance*, 22 U.S. 537, 538, 6 L.Ed. 154 (1824). A well-reasoned opinion on the identical question before us is *Dery v. Wyer*, 265 F.2d 804 (CA2 1959). There, the plaintiff, a citizen of New York, brought an action under the Federal Employers' Liability Act against the trustee of a railroad, also a citizen of New York. The railroad filed a third-party complaint against a New York lumber company, claiming indemnity for any loss for which it might be held liable to the plaintiff. Just as in the instant case, the plaintiff's action was settled and the district court proceeded to try the third-party claim. On appeal, the Second Circuit held that the ancillary jurisdiction over the third-party complaint survived the settlement of the main cause of action. *Dery v. Wyler, supra*, at 808. We observe no authority adopting a contrary rule and find the *Dery* opinion very persuasive. We hold that the district court had jurisdiction to hear American and Farley's complaint against Greyhound.

II.

The district court received in evidence, over a hearsay objection, page two of the report of the accident prepared by the investigating state police officer. Page two contained the officer's narrative of statements made by Farley on how the accident occurred. The district court held the statements admissible under both FRE 803(8),[1]

---

1. FRE 803(8) provides that "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." are exceptions to the rule precluding hearsay.

the public records exception to the hearsay rule, and FRE 613,[2] the rule governing examination of witnesses concerning prior statements.

Although we believe the district court may have erred in admitting the statements because of the holding in *Colvin v. United States*, 479 F.2d 998 (CA9 1973),[3] and because FRE 613 is probably not relevant to these circumstances,[4] we hold that any error was harmless in that it did not affect any substantial rights of the parties. F.R. Civ.P. 61.

Greyhound argues that because the statements were "enshrined" in a police report, the jury would accord them some special credibility. This argument is meritless. Greyhound had ample opportunity to cross-examine both Farley and the police officer. The jury must be credited with the competence to understand that Farley's statements were his alone and that the officer did not necessarily approve of them by noting them in his report. Moreover, the record reveals considerable evidence supporting Farley's account of the accident: The driver of the bus involved noted in his log that there was a truck accident at Sand Creek, and also distributed witness slips to his passengers. Yet at trial, he could not remember any accident. In addition, Mr. Hill testified that a large vehicle going in the opposite direction passed him immediately before he was struck by the trailer. Finally, we note that the evidence was merely cumulative. Farley told essentially the same story on the witness stand as he told the officer. We conclude that the admission of page two of the police officer's report was harmless error. The facts were shown by other admissible evidence (*Benna v. Reeder Flying Service*, 578 F.2d 269, 272 (CA9 1978)), and any error in admitting the report did not affect any substantial rights of the parties.

### III.

 The district court excluded from evidence a photocopy of page one of the police officer's report containing a notation by the officer that Farley was cited for failure to maintain control. Greyhound argues that because part of the police report was admitted, all of it must be admitted.

Greyhound fails to recognize that FRE 403 gives the court the power to exclude evidence where the danger of prejudice outweighs the explanatory value. In making this decision the trial court enjoys wide discretion. *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346–47 (CA5 1978); *United States v. Sigal*, 572 F.2d 1320 (CA9 1978). Since an arrest is not considered evidence of guilt, a citation should not be considered evidence of negligence. The unfair prejudice that the claimant would suffer from a nonjudicial determination of improper driving outweighs the probative value of the citation on the issue of negligence. We conclude that the district court acted well within its discretion in excluding evidence of Farley's citation.

---

2. FRE 613 provides:

> (a) *Examining witness concerning prior statement.* In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.
>
> (b) *Extrinsic evidence of prior inconsistent statement of witness.* Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

3. In *Colvin v. United States*, 479 F.2d 998 (CA9 1973), this circuit held that statements by a witness to an accident which were recorded in a report prepared by government investigators were inadmissible under either the "Records of regularly conducted activity" or the "Public records and reports" exceptions to the hearsay rule.

4. FRE 613 would appear not to be relevant because counsel for both parties were allowed to see the police report and because the statements in the report were *consistent* with the witness's testimony at trial. FRE 613(a) provides that opposing counsel must be shown the prior statement upon request, and FRE 613(b) concerns examination of witnesses with regard to prior *inconsistent* statements.

## IV.

The district court, over objection by Greyhound, admitted testimony by another truck driver that he was passed by a Greyhound bus traveling fifty to sixty miles per hour; that the bus slowed abruptly after completing the pass; and that he used his CB radio to warn traffic in the area about the bus. The other truck driver also testified that he came upon the accident approximately ten minutes after losing sight of the bus that passed him.

Greyhound argues that there was a lack of evidence of continuity of speed or reckless driving and that, therefore, the testimony of the other truck driver was too remote in time and space to be relevant.

The trial court is to determine, under all of the circumstances, whether testimony is too remote to have probative value. That decision will not be overturned by this court unless there is an obvious abuse of discretion. *United States v. Uarte*, 175 F.2d 110, 112, n.1 (CA9 1949). In *Uarte*, the trial court admitted evidence of the speed of a car four to eleven miles from the collision. Greyhound attempts to distinguish *Uarte*, arguing that, unlike *Uarte*, here there is no evidence linking the prior conduct to the accident. We disagree. There was evidence tending to establish facts from which the jury could logically infer that the Greyhound bus recklessly passed the other truck driver and continued down the road, only to be involved in an accident near Sand Creek. The truck driver testified that the bus passed him at a high rate of speed, slowed suddenly after completing the pass, and then accelerated down the straight and level stretch of road. Only ten minutes after losing sight of the bus, the truck driver arrived at the scene of the accident in which the bus was involved. At the minimum, the testimony of the other truck driver established that Greyhound did indeed have a bus near Sand Creek at the time of the accident. It cannot be said that the district court obviously abused its discretion in admitting the other truck driver's testimony.

## V.

Finally, Greyhound contends that the district court improperly instructed the jury on the burdens of proof. We disagree. The trial court instructed the jury that in order for Farley and American to prevail against Greyhound on their claim of negligence, they were required to prove by a preponderance of the evidence that Greyhound was negligent and that that negligence was the proximate cause of the accident. Because Greyhound had not merely denied that it was negligent, but had also *affirmatively alleged* that Farley was negligent, the court also instructed that Greyhound had the burden of proof on its claim of negligence. Greyhound now argues that it did not have any burden of proof in the case. However, Greyhound did have the burden of proof on its own affirmative allegations that Farley was negligent. True enough, had Farley and American failed to prove Greyhound's negligence, Greyhound would have been successful in the suit because it would not have been held liable for any damages. Nevertheless, the district court cannot be faulted for giving instructions based on the allegations in the pleadings. Moreover, any confusion that might have existed after the instructions were read, was alleviated by the use of the special interrogatories, which clearly instructed the jury to address first the question of whether Greyhound was proven to be negligent. The jury was instructed that if that question was answered in the negative, it should not answer any of the other interrogatories, but should have its foreman sign and return the verdict form. We conclude that the district court properly instructed the jury.

## CONCLUSION

The judgment of the district court must be affirmed.

IT IS SO ORDERED.