UNITED STATES of America, Plaintiff-Appellee,

v.

Esteban Duran LONGORIA, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Esteban Duran LONGORIA, Defendant-Appellant.

Nos. CA 79–1445, CA 79–1511.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 16, 1980.

Decided May 5, 1980.

2. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

Peter B. Keller, Tucson, Ariz., for defendant-appellant.

Gerald S. Frank, Tucson, Ariz., for plaintiff-appellee.

Before TRASK and SNEED, Circuit Judges, and GRAY,* District Judge.

TRASK, Circuit Judge:

On May 22, 1977, appellant Esteban Duran Longoria was indicted by a federal grand jury on eight counts of having transported illegal aliens,[1] and of conspiracy to transport illegal aliens.[2] Longoria was convicted of these charges and sentenced to three years in prison. The last two and one-half years of this sentence were suspended and Longoria was placed on three years probation.

On May 9, 1979, the government filed a petition to revoke appellant's probation after he was again arrested for transporting illegal aliens in his taxicab. A combined revocation hearing and motion to suppress was heard and on May 30, 1979, the district court revoked Longoria's probation and denied his motion to suppress.[3] Consequently, on June 19, 1979, the district court entered an order committing Longoria to the custody of the Attorney General for sixteen months. Defendant filed a timely notice of appeal.

The government then proceeded to try Longoria on two counts of alien transportation resulting from the May 9 arrest. Prior to trial the district court announced that it would allow the government to introduce evidence of Longoria's 1977 alien transportation conviction. The district court also denied a renewed motion to suppress for purposes of trial any evidence seized as a result of stopping Longoria's taxicab on

---

* Honorable William P. Gray, United States District Judge, for the Central District of California, sitting by designation.

1. 8 U.S.C. § 1324(a)(2). This statute provides in pertinent part:
   Any person . . . who—
   (2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports or moves or attempts to transport or move, within the United States by means of transportation or otherwise in furtherance of such violation of law; . . . any alien . . .
   not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony . . ..
   There was no challenge directed toward the legality of 8 U.S.C. § 1324(a)(2).

2. 18 U.S.C. § 371.

3. Longoria had moved to suppress for purposes of the revocation hearing any evidence obtained as a result of stopping his taxicab on May 9.

May 9, 1979. Appellant's first trial on the new charges resulted in a hung jury. At a second trial, appellant was found guilty on both counts. Longoria's appeal from this conviction has been consolidated with his appeal from the revocation hearing.

### I

Longoria was a taxicab operator in Nogales, Arizona. In 1977, he was convicted of having driven illegal aliens in his taxicab from a place where the illegal aliens had crossed into the United States to a motel in Nogales.

In 1978, the appellant was discovered driving illegal aliens, but no charges were filed as a result of that incident. In 1979, a border patrolman, John Harnett, learned that Longoria had met with a suspected alien smuggler in a Nogales restaurant. Harnett was also informed that some aliens had identified Longoria as the person who brought them by taxicab to the motel where they were eventually caught. Harnett was also aware of Longoria's 1977 conviction and the 1978 incident.

At approximately 7:00 a. m. on April 30, 1979, Harnett was near Tucson, Arizona, patrolling Interstate Highway 19, the principal highway between the border and Tucson. He noticed a taxicab which he identified as being driven by appellant. He promptly radioed ahead to his brother patrolman, Searle, to be on watch for Longoria. Harnett then was able to overtake the taxicab driven by appellant. He saw that there were four male passengers in the back seat and one male passenger in front. They appeared to be of Mexican or Spanish descent. Searle, who had stationed himself on an overpass, observed the taxicab through binoculars as it approached and went under the overpass. He identified Longoria as the driver. A third patrolman, Escobedo, had been monitoring the conversation between Harnett and Searle. Escobedo was a Mexican-American agent, and was driving an unmarked car. He carefully observed the occupants of the Longoria automobile. While making their vehicular surveillance of Longoria's taxicab, both Escobedo and Harnett observed facial features, appearances, and passenger reactions which, based on their experiences, led both agents to believe that the passengers were illegal aliens. The officers then pulled the taxicab to the side of the road and arrested Longoria.

### II

■ Appellant first contends that any evidence obtained as a result of stopping his taxicab should have been suppressed. Both district court judges who ruled on appellant's suppression motions determined that there was a founded suspicion which justified the stopping of the taxicab and that the evidence, in its entirety, constituted probable cause for the arrest. These findings should not be disturbed unless clearly erroneous. *United States v. Wysong*, 528 F.2d 345, 348 (9th Cir. 1976); *United States v. Chase*, 503 F.2d 571, 572 & n.3 (9th Cir. 1974), *cert. denied*, 420 U.S. 948, 95 S.Ct. 1332, 43 L.Ed.2d 427 (1975). We agree with the determinations of the district courts.

■ Appellant next argues that the introduction into evidence in his 1979 trial of his 1977 conviction for transporting illegal aliens was improper. Appellant contends that evidence of his prior conviction was inadmissible, relying entirely upon Rule 404(b) of the Federal Rules of Evidence. He does not invoke Rule 609. In relying upon Rule 404(b) appellant points out that the Rule provides that evidence of other crimes is only admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. Such evidence is admissible when relevant and if its probative value is not outweighed by the danger of unfair prejudice. *See* Fed.R.Evid. 402, 403. The government gave notice well in advance of trial of its intent to use the evidence of defendant's prior offense and a hearing was had on the motion in which the trial court ruled it admissible. The trial court's determination of such matters should be given great deference and its ruling should not be disturbed absent an abuse of discretion. *United States v. Batts*, 573 F.2d 599, 606

(9th Cir.), *cert. denied*, 439 U.S. 859, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978); *United States v. Riggins*, 539 F.2d 682, 683 (9th Cir. 1976), *cert. denied*, 429 U.S. 1045, 97 S.Ct. 749, 50 L.Ed.2d 758 (1977).

The Federal Rules of Evidence contain no requirement for similarity of conduct in determining the admissibility of evidence of prior offenses. In fact, "[r]elevant evidence is not to be excluded because it fails to meet a similarity requirement." *Riggins, supra* at 683. In this case the primary issue was whether the defendant knew that he was transporting illegal aliens. Accordingly, evidence of a prior similar offense is highly relevant and admissible to show the requisite knowledge, criminal intent, and lack of innocent purpose. Directly on point is *United States v. Holley*, 493 F.2d 581 (9th Cir.), *cert. denied*, 419 U.S. 861, 95 S.Ct. 112, 42 L.Ed.2d 96 (1974), in which such evidence was admitted. In that case a cab driver in a border town was convicted of transporting illegal aliens and the admission of evidence of a prior similar offense was upheld to prove knowledge and intent. Here the evidence was both similar and relevant. *See also United States v. Pulido-Santoyo*, 580 F.2d 352 (9th Cir.), *cert. denied*, 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d 263 (1978); *United States v. Castro-Castro*, 464 F.2d 336, 337 (9th Cir. 1972), *cert. denied*, 410 U.S. 916, 93 S.Ct. 971, 35 L.Ed.2d 278 (1973).

In this jury case it is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

The judgment is AFFIRMED.